## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 17-cr-30032** |
| | ) | |
| **RUSSELL MILLER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Russell Miller's Amended Motion for Compassionate Release (d/e 39) requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the motion is GRANTED.

## I. BACKGROUND

On October 20, 2017, Defendant Russell Miller pled guilty to Count 1 of the Indictment for possessing with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). On February 26, 2018, Defendant was sentenced to 240 months of imprisonment and a 10-year term of supervised release. Defendant is currently serving his sentence at

FCI Forrest City Low, and he has a projected release date of July 17, 2034.

On June 29, 2020, Defendant filed a pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  See d/e 36.  On July 6, 2020, following the appointment of the Federal Public Defender's Office to represent Defendant, an Amended Motion for Compassionate Release was filed.  See d/e 39. Defendant seeks compassionate release due to his health issues and the COVID-19 pandemic.  Defendant also argues that he has met the 30-day statutory exhaustion requirement found in 18 U.S.C. § 3582(c)(1)(A) because he submitted a request to the warden of his BOP facility on May 18, 2020.

On July 9, 2020, the Government filed a response opposing Defendant's motion.  See d/e 42.  The Government argues that Defendant has not established extraordinary and compelling reasons to warrant a reduction in his sentence and the factors set forth in 18 U.S.C. § 3553(a) do not warrant release.

On July 28, 2020, a hearing was held on Defendant's motion where the Court heard from Defendant and counsel.

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed.  See 18 U.S.C. § 3582(c).  However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met.  See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A).  See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194.  Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief.  With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting 30 days from when the inmate made his or her request, whichever is earlier.  The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to

appeal a failure of the Bureau of Prisons to bring a
motion on the defendant's behalf or the lapse of 30 days
from the receipt of such a request by the warden of the
defendant's facility, whichever is earlier, may reduce the
term of imprisonment (and may impose a term of
probation or supervised release with or without
conditions that does not exceed the unserved portion of
the original term of imprisonment), after considering the
factors set forth in section 3553(a) to the extent that they
are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a
reduction . . . and that such a reduction is consistent
with applicable policy statements issued by the
Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The Court concludes that § 3582(c)(1)(A) does not require the

Court to wait to consider a compassionate release request if there is

a credible claim of serious and imminent harm from this pandemic.

That does not mean the Court will waive the exhaustion

requirements in all cases.  The decision must be made on a case-

by-case basis.

In this case, Defendant argues that he submitted a request to

the warden of FCI Forrest City Low.  See d/e 36, 39.  The

Government did not dispute Defendant's contention.  See Response,

d/e 42.  Therefore, the Court finds that Defendant has met the 30-

day requirement pursuant to 18 U.S.C. § 3582(c)(1)(A).

The Court must consider whether "extraordinary and compelling reasons warrant such a reduction" and is "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).

The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons.  Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation.  Social distancing can be difficult for individuals living or working in a prison.

As of July 28, 2020, FCI Forrest City Low has 29 inmates and 2 staff members with active COVID-19, and 641 inmates and 4 staff members have recovered from the disease.  <u>See</u> COVID-19 Cases, Federal Bureau of Prisons, <u>https://www.bop.gov/coronavirus/</u> (last accessed July 28, 2020).  In total, BOP has "4,021 federal inmates and 424 BOP staff members who have confirmed positive results for COVID-19 nationwide," and there have been 101 inmate and 1 staff member deaths as a result of COVID-19.  <u>Id.</u>

Defendant is a 55-year-old white male who has hypertension, hyperlipemia, and is on blood thinners due to a previous myocardial infarction.  <u>See</u> d/e 36, 39.  Defendant is also clinically obese as he is 5'9" tall and weighs 232 pounds, which results in a BMI of 34.3.  <u>See</u> Adult BMI Calculator, CDC, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last accessed July 28, 2020).  Defendant is at a higher risk of serious illness or death if he contracts COVID-19.  <u>See</u> People at Any Age with Underlying Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed July 28, 2020) ("People of any age with the following conditions are at increased risk of severe illness from COVID-19:. . . Obesity (body mass index [BMI] of 30 or higher) . . . .").  Defendant's hypertension also might place him at a higher risk of serious illness or death.  <u>See</u> People at Any Age with Underlying Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed July 28, 2020) ("[P]eople with the following conditions might be at an increased risk for severe illness from COVID-19: . . .

hypertension or high blood pressure . . . .").

Defendant also argues that taking blood thinners increases his risk.  <u>See</u> d/e 39, p. 5.  The CDC lists "serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies" as a condition that does increase an individual's risk of severe illness from COVID-19.  <u>See</u> People with Certain Medical Conditions, CDC, <u>https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html</u> (last accessed July 28, 2020).  The CDC advises that having heart failure, coronary artery disease, cardiomyopathies, and pulmonary hypertension are serious heart conditions that increase the risk of severe illness from COVID-19.  Serious Heart Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#serious-heart-conditions (last accessed July 28, 2020).  Defendant previously had a myocardial infarction, which potentially caused heart damage. The American Heart Association advises that "[m]ost heart attack survivors have some degree of coronary artery disease (CAD) and will have to make important lifestyle changes and possibly take medication to prevent a future heart attack."  About Heart Attacks,

American Heart Association, https://www.heart.org/en/health-topics/heart-attack/about-heart-attacks (last accessed July 28, 2020).

The Court must also reconsider the factors set out in 18 U.S.C. § 3553(a).  Defendant Miller is currently serving a 240-month term of imprisonment for possessing with intent to distribute 50 grams or more of methamphetamine.  Defendant has spent over 36 months in custody – over 3 years – for his crime.  While incarcerated, Defendant has participated in educational programs. See d/e 46-2.  Defendant has committed only one disciplinary infraction.   See d/e 46-1.  BOP has classified Defendant as a low-risk recidivism level.  See d/e 40.  The Court acknowledges the argument made by defense counsel at the hearing regarding the sentencing disparities between actual versus mixed methamphetamine.  The Court has reconsidered the factors in § 3553(a) and concludes that they entitle Defendant to compassionate release.

The Court also considers whether Defendant is a danger to the safety of any other person or to the community.  See U.S.S.G. §

1B1.13.[1]  If Defendant quarantines himself at his new place of residence away from any other household members, that will diminish the risk of spreading the virus.  Otherwise, the Court does not find that Defendant poses a danger to the community.

The Court, taking all the relevant facts into account, finds that Defendant has established that there exist extraordinary and compelling reasons that warrant a reduction in his term of imprisonment, and the Court finds that compassionate release is appropriate in this case.

### III. CONCLUSION

For the reasons set forth above, Defendant Russell Miller's Amended Second Motion for Compassionate Release (d/e 39) is GRANTED.  The Court DENIES as MOOT the pro se motion filed by Defendant Miller (d/e 36).  The Court hereby reduces Defendant's term of imprisonment from 240 months to time served plus 72 hours in order to allow BOP to test Defendant for COVID-19 and for Defendant to arrange transportation.

---

[1] Section 1B1.13 of the Sentencing Guidelines has not been amended to reflect the First Step Act's amendment to 18 U.S.C. § 3582(c)(1)(A).  As it stands, § 1B1.13 refers to a reduction "upon the motion of the Director of the Bureau of Prisoners."  No policy statement provides guidance for when a defendant files a motion.  Nevertheless, the Court considers § 1B1.13.

The Court modifies Defendant's conditions of supervised release to require Defendant to spend 6 months in home confinement, with the first 14 days to be spent in isolation. The home confinement shall start as soon as possible after his term of supervised release begins. Defendant shall be monitored by telephonic monitoring as approved by the United States Probation Office until such time as the U.S. Probation Office is able to implement electronic monitoring. All other aspects of Defendant's sentence shall remain the same.

The Bureau of Prisons is ORDERED to immediately test Defendant for COVID-19. The Bureau of Prisons is also ORDERED to release Defendant once he has tested negative for COVID-19. The Clerk is DIRECTED to send a copy of this Opinion to FCI Forrest City Low. Defendant must self-quarantine for a period of 14 days beginning at the time of his release, including while he travels from his BOP facility to his new residence. Defendant shall travel to his new residence in a vehicle with three-row seating that allows him to follow the CDC's social distancing guidelines, which include staying at least six feet from others and wearing a face mask and gloves.

ENTER:  July 28, 2020

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE